UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA                    1:22-CR-120 JLS (MJR)

                                            REPORT, RECOMMENDATION
                                            AND ORDER

          v.


ROBERTO MORALES SANCHEZ,

                    Defendant.


        This case has been referred to the undersigned by the Hon. John L. Sinatra, Jr.

pursuant to 28 U.S.C. § 636(b)(1) for all pre-trial matters and to hear and report upon

dispositive motions. (Dkt. No. 3)

## BACKGROUND

        On July 27, 2022, a federal grand jury in the Western District of New York returned

an indictment against defendant Roberto Morales Sanchez ("defendant" or "Morales

Sanchez"), charging him with conspiracy, pursuant to Section 846 of Title 21 of the United

States Code, to commit the following crimes: (1) possession with intent to distribute, and

distribution of, one kilogram or more of a mixture and substance containing heroin,

methamphetamine, and 400 grams or more of a mixture and substance containing

fentanyl, in violation of Sections 841(a)(1), 841(b)(1)(A), and 841(b)(1)(C) of Title 21 of

the United States Code; (2) possession with intent to distribute, and distribution of,

controlled substances, the use of which resulted in serious bodily injury to A.R., a person

known to the grand jury, in violation of Sections 841(a)(1) and 841(b)(1)(C); and (3) using

and maintaining a place for the purpose of manufacturing, distributing and using heroin, fentanyl and methamphetamine, in violation of Section 856(a)(1) of Title 21 of the United States Code. (Dkt. No. 1, the "Indictment") The Indictment also charges Morales Sanchez with using and maintaining a drug-involved premises at 110 Fairview Avenue, Lower Apartment, Jamestown, New York, between 2019 and July 2020, as well as using and maintaining a drug-involved premises at 20 Willis Street, Jamestown, New York, between June 2020 and February 2021, both for the purpose of manufacturing, distributing and using heroin, methamphetamine, and fentanyl, and all in violation of Section 856(a)(1) of Title 21 of the United States Code and Section 2 of Title 18 of the United States Code.[1] (*Id.*)

On November 7, 2022, Morales Sanchez filed a motion to suppress evidence recovered on February 27, 2021, pursuant to the execution of search warrants for 20 Willis Street, Jamestown, New York, a 2008 Pontiac G6 sedan registered to defendant, and defendant's person. (Dkt. No. 38) Defendant also made various omnibus discovery demands. (*Id.*) The Government filed responses on January 17, 2023 (Dkt. No. 72) and the Court heard oral argument on February 16, 2023 (Dkt. No. 84).[2] Morales Sanchez filed a supplemental pre-trial motion on March 21, 2023, consisting of additional discovery

---

[1] The Indictment also charged co-defendants Ryan Bloom, Rachelle N. Allison, and Katie E. Calimeri with various narcotics offenses. (Dkt. No. 1) Bloom entered into a plea agreement with the Government on March 15, 2023. (Dkt. No. 94) Allison entered into a plea agreement with the Government on November 8, 2022. (Dkt. No. 43) Calimeri entered into a plea agreement with the Government on January 25, 2023. (Dkt. No. 78)

[2] The Government also provided copies of the relevant search warrant applications for the Court's *in camera* review. A copy of the applications have been filed under seal. (Dkt. No. 73)

demands.[3] (Dkt. No. 98) The Government responded on April 7, 2023 (Dkt. No. 99), at which time the Court considered the matter submitted.

## DISCUSSION

The Court will first address Morales Sanchez's motion to suppress evidence before turning to his non-dispositive omnibus discovery demands and the Government's request for reciprocal discovery.

### Motion to Suppress[4]

On February 27, 2021, Jamestown City Court Judge John L. LaMancuso signed warrants authorizing the search of (1) a residence at 20 Willis Street, Jamestown, New York; (2) a white 2008 Pontiac G6 four-door sedan registered to Morales Sanchez; and (3) defendant's person. (Dkt. No 72, Exhs. A, B; Dkt. No. 73) The applications consisted of an affidavit by Lieutenant Gregory J. Wozneak of the Jamestown Police Department as well a police report, a witness statement, and Jamestown City Court charging

---

[3] Together with his supplemental pre-trial motion, Morales Sanchez filed an affidavit of standing as to 20 Willis Street, Jamestown, New York and the 2008 Pontiac G6 sedan. (Dkt. No. 98-1) Therein, defendant stated that he resided at 20 Willis Street, Jamestown, New York on February 27, 2021 and that he did not give officers permission to enter his home or his vehicle on that date. (Id.)

[4] The facts described herein are taken from the indictment; the affidavit of defendant submitted in support of his suppression motion; the search warrant and search warrant application for 20 Willis Street as well as the 2008 Pontiac G6; and the parties' memorandums of law and accompanying exhibits filed with respect to the instant motions. Based upon these documents, exhibits, and filings, the Court finds that none of the material facts described herein are in dispute. Stated another way, defendant has not raised any factual dispute as to the circumstances of the search or the discovery of the evidence and/or contraband. "In order to warrant a suppression hearing, a defendant must demonstrate a specific factual dispute that can be resolved by a hearing." *United States v. Johnson*, 15-CR-98, 2017 U.S. LEXIS 195411 (W.D.N.Y. Nov. 3, 2017); *accord United States v. Mathurian*, 148 F.3d 68 (2d Cir. 1998). Thus, the Count finds no basis to hold an evidentiary hearing in order to make a recommendation on the legal arguments raised in defendant's suppression motion.

documents issued against defendant, including two informations and a felony complaint.[5]
(*Id.*) In his affidavit, Lieutenant Wozneak explained that, at approximately 12:18 a.m. on
February 27, 2021, members of the Jamestown Police Department responded to a call
complaining of an individual with a weapon at 20 Willis Street. (Dkt. No. 73, pg. 4) When
officers arrived at the residence, they were unable to speak with anyone or locate a victim.
(*Id.* at pg. 7) The officers later located the 911-caller at a nearby address. (*Id.*) The caller,
an eyewitness to the events at 20 Willis Street which precipitated the 911-call, provided
a voluntary, sworn statement to the officers. (*Id.* at pgs. 4, 13-16) Therein, the witness
stated that he went to 20 Willis Street at approximately 7:30 p.m. on February 26, 2021
because Morales Sanchez asked him to help remove some carpeting from the residence.
(*Id.* at pg. 4) The witness stated that while at the residence, Morales Sanchez became
angry because some of his heroin was missing. (*Id.*) Morales Sanchez began questioning
the witness about the missing heroin, which Morales Sanchez believed had been stolen,
and the witness answered that he knew nothing about the missing drugs. (*Id.*) Morales
Sanchez then told another person present to get his "thing", which the witness understood
to mean Morales Sanchez's gun. (*Id.* at pg. 5) This individual then recovered a silver
revolver from somewhere inside the residence. (*Id.*) According to the witness, Morales
Sanchez began waving the gun around and stated he was going to find Ryan Bloom,
because he believed that Bloom and Bloom's girlfriend, Katie Calmeri, had taken the
heroin from the residence and left. (*Id.*) Morales Sanchez indicated he was not going to

---

[5] While Judge LaMancuso issued separate search warrants on February 27, 2021, the same
affidavit by Lieutenant Wozneak and the same additional reports and documents were
submitted in support of both warrant applications. (Dkt. No. 73)

"lose a stack", which the witness believed to refer to $1,000.00 or the value of the missing heroin. (*Id.*) Morales Sanchez then left the residence. (*Id.*)

The witness further informed the investigating officers that, a short time later, Morales Sanchez returned to 20 Willis Street with Bloom and Calmeri and an argument ensued over who took the heroin. (*Id.* at pg. 5) The witness's cell phone kept ringing, and Morales Sanchez became agitated and took the phone from the witness. (*Id.* at pgs. 5, 31) The witness indicated that Morales Sanchez had the gun in his hand when he took the phone. (*Id.*) Then, while still continuing to hold the gun, Morales Sanchez began to question everyone present, in a threatening manner, as to whether they called the police. (*Id.* at pg. 5) The witness reported that officers arrived at 20 Willis Street and knocked on the door, at which time Morales Sanchez forced everyone to go upstairs and remain silent so that the officers would leave. (*Id.*) The witness reported that Morales Sanchez held the gun to his face and told him to remain silent. (*Id.*) When Morales Sanchez left the room, the witness jumped over a railing and fled the house because he feared he would be killed. (*Id.*) The witness ran to a nearby house and a person inside called the police on his behalf. (*Id.*) While he was at the nearby residence, the witness observed the white Pontiac G6 belonging to Morales Sanchez "racing" down the street. (*Id.* at pgs. 5, 32)

Lieutenant Wozneak's application went on to explain that, after speaking with the witness, officers set-up surveillance of the white 2008 Pontiac G6 registered to Morales Sanchez, which was parked "up the road" from 20 Willis Street. (*Id.* at pg. 5) Officers observed Morales Sanchez and another individual leave the residence and get into the Pontiac. (*Id.*) Officers stopped them from leaving and detained them. (*Id.*) According to the police report and various state court charging documents submitted with the warrant

application, Morales Sanchez was charged, that same day, with the following violations of New York State Penal Law: (1) menacing in the second degree; (2) unlawful imprisonment in the second degree; and (3) robbery in the first degree. (*Id*. at pgs. 9-12) The robbery charge was premised upon Morales Sanchez's taking of the witness's cell phone at gunpoint. (*Id*. at pg. 11) The vehicle was placed in a secure holding area while officers applied for the instant warrant to search the residence and the car. (*Id*. at pg. 5)

In his affidavit, Lieutenant Wozneak averred that as a result of these events, he believed that the gun used to rob the witness and threaten the witness and others would be found either inside 20 Willis Street or inside the 2008 Pontiac G6. (*Id*. at pg. 5) Wozneak stated that Morales Sanchez has been involved in an investigation by the Jamestown Metro Drug Task Force for the trafficking of heroin and fentanyl into the Jamestown area, and therefore it was Wozneak's belief that illegal drugs were also likely to be found in the residence and/or vehicle. (*Id*.) Lieutenant Wozneak further represented that he has been a police officer for 18 years and that he is currently a member of the Jamestown Metro Drug Task Force. (*Id*. at 4) He stated that, as a result of his training and experience, he has learned that drug traffickers often sell and purchase drugs with cash; that drug traffickers use a variety of materials to package drugs for sale; that drug traffickers often have a high volume of traffic going to and from a particular location at different times of the day and night; that drug traffickers typically keep a written (*i.e.* notebooks, scrap paper) or digital (*i.e.* cell phones, computers) account of their transactions; and that drug traffickers often travel to various locations for sales and will often keep evidence of their illegal activities in their vehicle, safes or other hidden compartments. (*Id*.)

Based on Lieutenant Wozneak's averments and the other supporting documents, the warrants were signed by Judge LaMancuso on February 27, 2021 and executed shortly thereafter. According to the Government, law enforcement recovered the following items from the search of the 2008 Pontiac G6: (1) $23,300 in United States currency under the front passenger seat; (2) two Android cell phones on the front passenger seat; (3) $1,220 in United States currency inside a wallet on the front passenger seat; and (4) two Netspend cards inside a wallet on the front passenger seat. (Dkt. No 72, pg. 39) Also according to the Government, law enforcement recovered the following items from the search of 20 Willis Street: (1) a box containing 43 rounds of .357 ammunition in the laundry room; (2) several empty white wax bags with the black panther logo in the living room; and (3) a Smith & Wesson .357 revolver with 6 rounds of .357 ammunition inside a black hooded sweatshirt in the yard outside the residence. (*Id.* at 39)

*There was probable cause to issue the search warrants.*

Upon a challenge to a probable cause finding made in a search warrant, a reviewing court must give deference to the issuing judge. *Illinois v. Gates*, 462 U.S. 213, 236 (1969). The court is not to conduct a *de novo* review nor is it to "interpret[] affidavit[s] in a hypertechnical, rather than a commonsense, manner." *Id.* Instead, the role of a reviewing court "is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 238 (internal citations omitted). To that end, warrant affidavits are entitled to "a presumption of validity." *Franks v. Delaware*, 438 U.S. 154, 171 (1978). Where, as here, the Court is reviewing the probable cause determination of an independent magistrate, it asks solely "whether the issuing judicial officer had a substantial basis for the finding of probable cause." *United States v. Wagner*,

989 F.2d 69, 72 (2d Cir. 1993). Doubts regarding the existence of probable cause should be resolved in favor of upholding the search warrant. *See United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983).

Here, defendant contends that the warrants issued on February 27, 2021 were not supported by probable cause in that they were "void of any reference to defendant or his involvement in criminal activity" and they "failed to establish that [defendant] would have drugs [or other contraband] on his person or store them in his [vehicle or] place of residence." (Dkt. No. 38, pgs. 39-43) The Court disagrees.

When considering whether to grant an application for a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit…there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 236-38 (1983). *See also United States v. Gaskin*, 364 F.3d 438 (2d Cir. 2004) (probable cause does not demand "certainty" but only a "fair probability" that contraband or evidence of a crime will be found). In determining whether probable cause exists to justify a search, courts must look for a reasonable nexus between the criminal activities described in the warrant application and the places to be searched. *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004).

Here, the warrant application recounted how the witness was present at 20 Willis Street when Morales Sanchez discovered that his heroin had recently been stolen. The witness then observed Morales Sanchez produce a gun that was secreted somewhere in the residence. The witness recounted how Morales Sanchez threatened the witness and others, at gunpoint, over the value and location of the missing heroin and how Morales

Sanchez then robbed the witness of his cell phone. After running from 20 Willis Street to a nearby residence, the witness observed Morales Sanchez's Pontiac G6 racing down the street. Officers also observed Morales Sanchez leave 20 Willis Street and get into the Pontiac G6 shortly after interviewing the witness. The totality of these circumstances presented a fair probability that evidence of certain crimes, specifically robbery and the unlawful possession of firearms and/or narcotics, would be found either at 20 Willis Street, in the 2008 Pontiac G6, or on defendant's person. In fact, the victim/witness provided officers with a detailed, voluntary, and sworn statement of the events, which was included in the warrant application, and Morales Sanchez was charged, in state court, with robbery, menacing, and kidnapping prior to the issuance of the warrants. *See United States v. Gaviria*, 805 F.2d 1108, 1115 (2d Cir. 1986) ("[A] witness to a crime need not be shown to have been previously reliable before the authorities may rely on his statements.") (internal quotation marks omitted); *Gates*, 462 U.S. at 234 ("[An] explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles [a] tip to greater weight than might otherwise be the case."); *United States v. Harding*, 273 F. Supp. 2d 411, 418 (S.D.N.Y. 2003) ("[i]nformation provided by a crime victim or other citizen witness may be accepted even absent a proven track record of reliability or corroboration").

Moreover, Lieutenant Wozneak's averments that Morales Sanchez was under investigation by the Jamestown Metro Drug Force for the trafficking of heroin and fentanyl was corroborated by the witness's representations that Morales Sanchez indicated he possessed a significant amount of heroin and was concerned over losing a "stack" of money due to the value of the stolen drugs. *See United States v. Smith*, 9 F.3d 1007,

9

1013 (2d Cir. 1993) (affiant's independent corroboration of informant's statements buttresses informant's reliability); *United States v. Gagnon*, 373 F.3d 230, 236 (2d Cir. 2004) (in assessing the totality of the circumstances for purposes of a probable cause determination, courts also evaluate whether the information an informant provides is corroborated by independent police investigation). This information, combined with Wozneak's averments about typical behavior of narcotics traffickers, further provided probable cause to believe that narcotics and/or evidence of drug trafficking would be discovered in defendant's residence or vehicle, or on his person. *See United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985) (recognizing that "drug traffickers frequently maintain at their homes large amounts of cash, drugs, books, ledgers and other documents evidencing their criminal activities," and an agent's "expert opinion" that is the case "is an important factor to be considered by the judge reviewing a warrant application."). Thus, the Court finds that the warrants were supported by probable cause.

The Court rejects defendant's contention that an evidentiary hearing is required because the warrants contained either intentionally false statements or material misrepresentations of fact. The Fourth Amendment entitles a defendant to a hearing if a defendant makes "a substantial preliminary showing that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the judge's probable cause finding." *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998) (internal quotation marks omitted). To make this "substantial preliminary showing", the defendant must point out with specificity the errors in the affidavit in a way that is "more than conclusory" and provide a statement of supporting reasons. *Franks v. Delaware*, 438 U.S.

_

154 (1978). Indeed, "[t]he burden to obtain [a *Franks*] hearing is a heavy one, and such hearings are exceedingly rare." *United States v. Melendez*, 16-CR-33, 2016 WL 4098556, at *7 (S.D.N.Y. July 28, 2016). *See also United States v. Mandell*, 710 F.Supp.2d 368, 372 (S.D.N.Y.2010) ("Hearings under *Franks* are not freely granted.").

The only specific reason offered by defendant as to why a *Franks* hearing is necessary here is that the issuing magistrate was not expressly informed that no heroin or other contraband had been found at 20 Willis Street. This showing is insufficient to warrant a *Franks* hearing. Nowhere in the warrant application did Lieutenant Wozneak state or imply that officers actually found drugs or a firearm at the residence. Instead, the warrant application makes clear that (1) Morales Sanchez told the witness that "a stack" of heroin belonging to him had been stolen and (2) the witness had observed Morales Sanchez with a firearm. Thus, the warrant application did not contain any false statement with respect to the actual discovery of narcotics or other contraband. Further, the fact that the warrant did not expressly or affirmatively state that no heroin or firearm was found at the residence is not a material omission. *See United States v. Rosa*, 11 F.3d 315, 327 (2d Cir. 1993) (finding that a search warrant affidavit's failure to state that a security sweep of [the subject's] apartment had turned up no weapons or contraband was not a material omission). Moreover, even if the absence of this statement did constitute a material omission, which it did not, the record is devoid of any evidence that the omission was either intentional, designed to mislead, or made with a reckless disregard for the truth. It is well established that, before a *Franks* hearing is held, "the reviewing court must be presented with credible and probative evidence that the omission of information …. was designed to mislead or was made in reckless disregard of whether [it] would mislead."

*United States v. Rajaratnam*, 719 F.3d 139, 154 (2d Cir. 2013) (internal citations and quotations omitted). Finally, the officers applying for the warrant had no reason to disbelieve the statements made by the victim/witness, whose account, combined with the other evidence in the application, supplied probable cause for believing that drugs, firearms and/or other evidence or contraband were likely to the found in the places sought to be searched. *See United States v. Campino*, 890 F.2d 588, 592 (2d Cir. 1989) ("*Franks* does not require that all statements in an affidavit be true; it simply requires that the statements be 'believed or appropriately accepted by the affiant as true.'") (internal quotations omitted).[6]

<u>*The search warrants were not overbroad or lacking in particularity.*</u>

Morales Sanchez next argues that the search warrants were overbroad and not sufficiently particularized. He contends that "the lack of nexus between the allegations in the complaint and particular allegations of activity at the residence…renders the warrant[s] overly broad [in] violation of the Fourth Amendment." The Court rejects these arguments.

To prevent a "wide-ranging exploratory search," *Maryland v. Garrison*, 480 U.S. 79, 84 (1987), the warrant must enable the executing officer to ascertain and identify with

---

[6] The Court notes that even if the affidavit had expressly stated that no heroin or contraband was found at 20 Willis Street, the probable cause finding here would remain unchanged. A warrant may issue even in the absence of "direct, first-hand, or hard evidence" linking the criminal objects to a particular place. *United States v. Maneti*, 781 F. Supp. 169, 177 (W.D.N.Y. 1991). Rather, an issuing court need only conclude that "it would be reasonable to seek the sought-after objects in the place designated in the affidavit." *Id.* at 177. Here, the totality of the information in the application presented a fair probability that either narcotics, a firearm, or other contraband or evidence of a crime would be found in Morales Sanchez's home and/or vehicle, or on his person. *See United States v. Malin*, 908 F.2d 163, 166 (7th Cir. 1990) (in making a probable cause determination, a judge "'is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.").

certainty those items that the magistrate has authorized him to seize. *United States v. Vargas*, 621 F.2d 54, 56 (2d Cir. 1980). To that end, the particularity requirement of the Fourth Amendment requires that a warrant: (1) identify the specific offense or offenses for which law enforcement officers have established probable cause; (2) describe the place to be searched; and (3) specify the items to be seized by their relation to the designated crimes. *United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017). A search warrant is not overbroad so long as "there exists probable cause to support the breath of the search that was authorized." *United States v. Dinero Express, Inc.*, 99-CR-975, 2000 WL 254012, at *9 (SDNY Mar. 6, 2000). In sum, "[p]articularity is the requirement that the warrant must clearly state what is sought…[b]readth deals with the requirement that the scope of the warrant be limited to the probable cause on which the warrant is based." *United States v. Cioffi*, 668 F. Supp. 2d 385, 390 (E.D.N.Y. 2009). The search warrants at issue here comply with these requirements.

First, the warrants identified "Criminal Possession of a Weapon, Robbery, 1st, and Criminal Possession of a Controlled Substance, as enumerated in the New York State Penal Law" as the specific offenses for which law enforcement established probable cause. (Dkt. No. 73) The warrants also expressly described the places to be searched: (1) the residence located at 20 Willis Street, Jamestown, New York; (2) the white, 2008 Pontiac G6 registered to Morales Sanchez, bearing registration JNX 7636; and (3) the person of Morales Sanchez. (*Id.*) Lastly, the warrants specified the items to be seized in relation to the specified crimes of weapons possession, drug trafficking and robbery:

> [I]ncluding, but not limited to heroin[,] monies, records, scales and packaging, lock boxes and safes used in the sale and distribution of heroin, pistols, firearms, ammunition, bullets, magazines, lock boxes, and safes that are used to store pistols, firearms, ammunition, bullets, and magazines,

any electronic device containing surveillance video data, cell phones and computers. The records sought include any digitally stored data...stored on cell phones, computers, hard drives, removeable storage drives, or CD and DVD data disks[.] [7]

(Dkt. No. 73)

Here, the warrants properly authorized the search for and seizure of specific evidence related only to the crimes for which the issuing magistrate found probable cause, namely robbery, drug trafficking and unlawful possession of a weapon. Moreover, the list of items provided was sufficiently specific or particular enough to identify the items or types of items that were to be seized, in relation to the crimes referenced, and also to prevent a general, exploratory search or rummaging. In fact, "the particularity requirement does not require that every item or document seized must be specifically identified in a warrant." *United States v. Lake*, 233 F. Supp. 2d 465, 471 (E.D.N.Y. 2002). Instead, "generic terms may be used to describe materials to be seized so long as the warrant identifies a specific illegal activity to which the item related." *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992). While the instant warrants identified some general or broad categories of items, such as records and electronic devices, these items are listed in terms of their connection to the use and distribution of heroin. Moreover, the Court finds the list of seizeable items here akin to the types of lists that other courts have generally deemed constitutional. *See e.g., United States v. Jacobson*, 4 F. Supp. 3d 515, 524 (E.D.N.Y. 2014) (warrants were sufficiently particular "[b]ecause the [warrants]

---

[7] According to defendant and the Government, two cell phones were seized during the execution of the search warrants on February 27, 2021. The Government has represented that (1) the contents of the cell phones were never searched and (2) it is not using the content of any of the seized phones as evidence against defendant at trial. (Dkt. No. 72, pgs. 31-32) Thus, to the extent that defendant is objecting to a search of the contents of the seized phones, his challenge is denied as moot.

referenced particular crimes and used illustrative lists as a means of limiting the items to be seized"); *United States v. Reed*, 2:13-CR-29, 2013 WL 5503691, *4 (D. Vt. Oct. 2, 2013) (warrant was sufficiently particular and not overbroad where the list of evidence to be seized provided for the seizure of any "personal property related to the importation and distribution of controlled substances" and provided examples of specific items, including cell phones, that were likely to be related to the alleged crime); *United States v. Washington*, 48 F.3d 73 (2d Cir. 1995) (finding sufficient particularity where a warrant that authorized seizure of "[a]ny and all papers, records, receipts, documentation, telephone lists and records which may be related to illicit drug activities."); *United States v. Riley*, 906 F.2d 841, 843-46 (2d Cir. 1990) (finding categories of records "and other items that constitute evidence of" drug crimes sufficiently particular and noting that "allowing some latitude in this regard simply recognizes the reality that few people keep documents of their criminal transactions in a folder marked 'drug records'"). For these reasons, the Court finds that the search warrants do not fail for overbreadth or lack of particularity.

### *Good Faith*

For the reasons just stated, the Court finds that defendant's motion to suppress evidence found during the execution of the February 27, 2021 search warrants should be denied. However, even assuming *arguendo* that the search warrants were not supported by probable cause, were overbroad, or lacked particularity, the Court still would not recommend suppression of the evidence. "Evidence seized pursuant to a warrant for which actual probable cause does not exist or which is technically deficient is admissible if the executing officers relied on the warrant in 'objective good faith.'" *United States v. Cancelmo*, 64 F.3d 804, 807 (2d Cir. 1995); *quoting United States v. Leon*, 468 U.S. 897,

923 (1984). As a result, "[s]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Leon*, 468 U.S. at 922. Under this standard, "[m]ost searches will be upheld." *United States v. Rickard*, 534 F. App'x 35, 37 (2d Cir. 2013).

There are four circumstances in which the good faith exception does not apply: (1) where the issuing judge has been knowingly misled; (2) where the issuing judge wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance on it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable. *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008). None of these circumstances apply here. Indeed, it was reasonable for the officers to rely both on the face of the warrant and Judge LaMancuso's probable cause finding. As the Supreme Court and the Second Circuit have held, an officer is not "required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he requested." *United States v. Buck*, 813 F.2d 588, 591 (2d Cir. 1987); *quoting Massachusetts v. Sheppard*, 468 U.S. 981-90 (1984).

For all of these reasons, the Court recommends that defendant's motion to suppress evidence be denied in its entirety. [8]

---

[8] In his pretrial motion, Morales Sanchez also moved to suppress any statements he made to law enforcement. (Dkt. No. 38, pgs. 32-35) The Government responded that it is unaware of any custodial statement made by defendant, at any time, to law enforcement. (Dkt. No. 72, pgs. 9, 24-25) Thus, the Court finds that defendant's motion to suppress statements is moot.

## **Omnibus Discovery Demands**

### _Discovery and Inspection_

Defendant moves for discovery and inspection pursuant to Federal Rule of Criminal Procedure 16. (Dkt. No. 38, pgs. 15-22) Rule 16(a) requires the Government to disclose certain evidence and information upon request of a defendant. While Rule 16 was intended to provide for liberal discovery, a defendant is not entitled to discovery of "the entirety of the Government's case against him." _United States v. Percevault_, 490 F.2d 126, 130 (2d Cir. 1974). Rule 16 provides that a defendant is entitled to the following: (1) a defendant's written, recorded, or oral statements in the possession of the Government; (2) the defendant's prior record; (3) documents, objects, books, papers, photographs, etc. that will be used during the Government's case-in-chief; (4) reports of examinations or tests; (5) and information about expert witnesses in accordance with Fed. R. Evid. 702, 703 and 705. _See_ Fed R. Crim. P. 16(a)(1). Rule 16 specifically exempts from disclosure "reports, memorandum, or other internal Government documents made by an attorney for the Government or other Government agent in connection with investigating or prosecuting the case." _See_ Fed. R. Crim. P. 16(a)(2).

Defendant's Rule 16 requests include, _inter alia_, any written or recorded statements made by defendant; inspection of any relevant books, papers, documents, photographs, audio tapes or videos that the Government intends to use at trial; reports of any physical or mental health examinations the Government intends to use at trial; information obtained from the inspection or search of any electronic devices; all relevant laboratory reports or other forensic analysis; radio logs or other relevant police communications; Title III authorizations or wiretap applications; surveillance reports;

transcripts; search warrants and supporting affidavits; and logs, reports or investigative notes of law enforcement personnel. Defendant also requests the names, identities, and qualifications of any expert witnesses the Government intends to call at trial, as well as any reports, results of tests, experiments, or examinations which the Government intends to offer as trial. The defendant further requests notification, pursuant to Federal Rule of Criminal Procedure 12(b)(4), of any evidence the Government intends to use in its case-in-chief at trial.

The Government responds that it has provided all voluntary discovery required under Rule 16 or has made such discovery available for inspection by defense counsel. (Dkt. No. 72, pgs. 6-13) The Government indicates that it is unaware of any custodial statements made by defendant. The Government has provided jail letters, body camera footage, and booking video related to defendant as well as the criminal histories of defendant and co-defendants. The Government has disclosed, or allowed inspection of, any documents, objects, photographs, papers, and books that the Government anticipates using during its case-in-chief at trial. The Government has made available recordings of controlled purchases for defense counsel's review and has provided forensic laboratory reports of seized controlled substances and DNA reports, and will provide any additional laboratory reports upon receipt. The government states that there are no Title III or wiretap materials in this case. The Government states that it intends to use all items of evidence that defendant has been provided with or made aware of, in accordance with Federal Rule of Criminal Procedure 12(b)(4)(A).

Based upon the representations made by the Government, defendant's request for discovery pursuant to Rule 16 is denied as moot. The Government is reminded that

its disclosure obligations pursuant to Rule 16 and its notice obligations pursuant to Rule 12 continue up through and during trial. *See* Fed. R. Crim. P. 16(c) and 12(b)(4)(A). Finally, the Government is expected to comply with all requirements in Rule 16, Federal Rules of Evidence 702, 703, and 704, and Judge Sinatra's pretrial order as they apply to expert testimony.

### *Brady/Giglio Material*

Defendant moves for the disclosure of any favorable, exculpatory or impeachment materials pursuant to *Brady*, *Giglio* and their progeny. (Dkt. No. 38, pgs. 4-5, 22-29) He further contends that the Government has failed to comply with this Court's August 5, 2022 Order pursuant to Federal Rule of Criminal Procedure 5(f) and the Due Process Protections Act, Pub. L. No. 116-182, 134 Stat. 894 (Oct. 21, 2020). (*Id.*)

The Government has an obligation to disclose exculpatory material, or material favorable to an accused as to either guilt or punishment, even when no affirmative request has been made. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Material "favorable to an accused" includes not only evidence that affirmatively tends to exculpate the defendant, but also information that impeaches the credibility of Government witnesses. *See Giglio v. United States*, 405 U.S. 150, 154-55 (1972). The test for materiality is whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Evidence may be material for *Brady* purposes even if it is not admissible, as long as it could lead to the discovery of admissible evidence. *United States v. Gill*, 297 F.3d 93, 104 (2d Cir. 2002). "[A]s a general rule, *Brady* and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant." *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001). "[A]s long as a

defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." *Id.* at 144.

Recently, the Due Process Protections Act amended Federal Rule of Criminal Procedure 5 to require courts to "issue an oral and written order to prosecution and defense counsel that confirms the disclosure obligations of the prosecutor under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and the possible consequences of violating such order under applicable law." *See* Fed. R. Crim. P. 5(f). Thus, at the time of defendant's arraignment on August 4, 2022, this Court issued an order, pursuant to Rule 5(f), memorializing the Government's *Brady* and *Giglio* obligations (the "Rule 5(f) Order"). (Dkt. No. 6) Here, the Rule 5(f) Order requires the Government to disclose to defendant all information, known to the Government, that is "favorable to the accused" and "material to guilt or punishment." (*Id.*) The Government must disclose this information promptly after its existence becomes known to the Government so that the defense may make effective use of the information in the preparation of its case. (*Id.*) The Rule 5(f) Order further requires the Government to disclose any *Giglio* impeachment material sufficiently in advance of trial in order for the defendant to make effective use of the material at trial, or at any such time as the Court may order. (*Id.*)

Defendant maintains that while the Government has provided discovery, defendant has not received the information required by the Court's Rule 5(f) Order. (Dkt. No. 38, pgs. 7-8) Specifically, defendant submits that on February 16, 2023, the Government provided *Giglio* material with respect to two Jamestown police officers who participated in the investigation of defendant. Defendant claims, however, that there is

other relevant *Giglio* material in existence with respect to (1) other police officers involved in the case and (2) non-law enforcement witnesses. Defendant maintains that the Rule 5(f) Order requires that this material be turned over immediately, and that the Government's failure to have already disclosed this information requires sanctions. The Court disagrees and finds, for the reasons stated below, that the Government has complied with its *Brady* and *Giglio* obligations as well as with the Court's Rule 5(f) Order.

Courts have recognized that "the Due Process Act...reaffirmed, *but did not expand*, preexisting prosecutorial obligations in discovery, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963)." *United States v. Buntyn*, 1:20-CR-708, 2021 WL 4456738, at *2 (D.N.M. Sept. 29, 2021) (emphasis added). *See also United States v. Posa*, 8:11-CR-555, 2022 WL 3161948, at *3 (M.D. Fla. June 24, 2022), *reconsideration denied*, 8:11-CR-555, 2022 WL 3161875 (M.D. Fla. July 21, 2022), *and appeal dismissed*, 22-12573, 2022 WL 18539771 (11th Cir. Oct. 5, 2022) ("The Due Process Protections Act of 2020 amended Rule 5 of the Federal Rules of Criminal Procedure to require the judge in all criminal proceedings to issue an oral and written order to prosecution and defense counsel that confirms the obligation of the prosecutor under *Brady*. It is a law that does not require prosecutors to do more than they already were required to do under *Brady*. It is intended to remind the prosecutor of his obligation...").

Here, with respect to *Brady* material, the Government has represented that (1) it is aware of its obligations and responsibilities under *Brady*; (2) it is currently unaware of any *Brady* material pertinent to this case; and (3) it acknowledges its continuing duty under *Brady* to provide such material, if and when the Government becomes aware of it. (Dkt. No. 72, pgs. 13-17; Dkt. No. 99, pg. 12) These representations are sufficient under the

case law governing *Brady* disclosure obligations, Rule 5(f) of the Federal Rules of Criminal Procedure, and this Court's Rule 5(f) Order. *See United States v. Gonzalez*, 21 CR 288, 2022 U.S. Dist. LEXIS 152726 (S.D.N.Y. Aug. 4, 2022) (denying motion for production where the court ordered the government to comply with its *Brady* obligations and the government confirmed its understanding of these obligations and attested to its compliance with the Rule 5(f) Order and *Brady*); *United States v. Ikoli*, 16 Crim. 148, 2017 U.S. Dist. LEXIS 11752 (S.D.N.Y. Jan. 26, 2017) (denying a motion for production of *Brady* and *Giglio* material where the Government affirmed its compliance); *United States v. Rodriguez*, 19-CR-779, 2020 WL 5819503, at *10 (S.D.N.Y. Sept. 30, 2020) (stating that "[c]ourts in this Circuit have repeatedly declined to issue pretrial discovery orders pertaining to *Brady* and *Giglio* material, upon a good faith representation by the government that it has complied — and will continue to comply — with its disclosure obligations" and collecting cases).

With respect to *Giglio* material, the Government has, apparently, already provided to defendant, *Giglio* material pertaining to two law enforcement officers involved in the investigation of Morales Sanchez. Further, the Government has represented that it will provide all other *Giglio* material prior to trial, in accordance with the District Court's scheduling order, and no later than when the Government produces and delivers the *Jencks* Act material in this case. (Dkt. No. 99, pgs. 13-14) These representations are consistent with the Court's Rule 5(f) Order, which requires that the Government provide impeachment material sufficiently in advance of trial in order for the defendant to make effective use of the material at trial, or at any such time as the Court may order. Indeed, the District Court has not yet set a trial date in this case. Moreover, these representations

are consistent with the applicable case law governing the production of *Giglio* materials. See *United States v. Nixon*, 418 U.S. 683, 701 (1974) (evidence which is not exculpatory, but instead relevant for purposes of impeachment, must be produced to defense, but need not be turned over in advance of trial); *Coppa*, 267 F.3d at 145-46 (impeachment material is properly disclosed at the same time as *Jencks* Act material, *i.e.*, after the government witness has testified on direct examination); *United States v. Minaya*, 11-CR-755, 2012 WL 1711569, at *4 (S.D.N.Y. May 4, 2012) ("[T]here is no constitutional right to early disclosure of *Giglio* or § 3500 material."); *United States v. Frank*, 11 F. Supp. 2d 322, 325 (S.D.N.Y. 1998) (noting that government may "defer[ ] production" of *Giglio* material "until closer to the time of the witnesses' testimony" as long as the defendant still has time to use it effectively).

Given the Government's representations and for the reasons just stated, defendant's motion to compel the production of *Brady/Giglio* material and defendant's request for sanctions for failure to comply with the Court's Rule 5(f) Order are denied. The Government is reminded of its continuing *Brady* obligations and, consistent with *Coppa*, the Government shall timely disclose any *Brady* and *Giglio* material to defendant. Should the Government fail to make such disclosures "before it is too late for [defendant] to make beneficial use of [the material] at trial", defendant may renew his motion. *United States v. Trippe*, 171 F. Supp. 2d 230, 237-38 (S.D.N.Y. 2001).

<u>*Disclosure of Jencks Material*</u>

Defendant moves for the pre-trial disclosure of witness statements. (Dkt. No. 38, pgs. 29-31)

The Government has no general duty to disclose the identities of its witnesses before trial. *United States v. Bejasa*, 904 F.2d 137, 139 (2d Cir. 1990). Section 3500 of

Title 18 of the United States Code requires that the government, on motion of defendant, disclose a government witness's prior statements that are in the government's possession and relate to the subject matter of the witness's direct testimony ("*Jencks* material"). *See also Jencks v. United States*, 353 U.S. 657 (1957); Fed. R. Crim. P. 26.2 (procedure for producing a witness statement). A witness statement is defined as: (1) a written statement by a witness that is signed or otherwise adopted or approved by the witness; (2) a substantially verbatim recording or transcription of a witness's oral statement; or (3) any statement however taken or recorded made by the witness to the grand jury. 18 U.S.C. 3500(e). Statements are not required to be produced, by law, until after the witness has testified on direct examination, and the Court cannot mandate that they be produced sooner. *See* 18 U.S.C. §3500(a); Fed. R. Crim. P 26.2(a).

Here, the Government indicates that it will produce *Jencks* material sufficiently prior to trial to allow defendant adequate time to prepare and, in accordance with the District Court's pre-trial order, so as to allow the Court to conduct the trial in a timely and efficient manner. (Dkt. No. 72, pg. 19)[9] In light of these representations, defendant's request for early disclosure of witness identities and statements is denied as moot.

<u>Bill of Particulars</u>

Defendant moves for a bill of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure. (Dkt. No. 38, pgs. 8-12) Defendant seeks, *inter alia*, the names of all charged and un-charged co-conspirators; a list of drug transactions in which defendant was allegedly involved; the statements and events the Government will rely on to prove a conspiracy; information as to when each member joined the conspiracy; the specific

---

[9] The Government represents that it has already disclosed some witness statements in this case pursuant to a protective order. (Dkt. No. 99, pgs. 4-5)

quantities of drugs alleged to have been involved and whether defendant possessed them individually or collectively with others; and details as to how defendant was connected to the drug-involved premises as well as how defendant specifically used those premises. (*Id.*)

Federal Rule of Criminal Procedure 7(f) "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). However, "[t]he Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendants committed the crimes charged, or a preview of the Government's evidence or legal theories." *United States v. Rittweger*, 259 F. Supp. 2d 275, 291 (S.D.N.Y. 2003). In determining whether a bill of particulars is warranted, a court is to consider "the complexity of the offense, the clarity of the indictment, and the degree of discovery otherwise afforded to defendants." *United States v. Shoher*, 555 F. Supp. 346, 349 (S.D.N.Y. 1983). It is well-settled that acquisition of evidentiary detail is not the purpose of a bill of particulars. *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990). Further, a defendant is not generally entitled to receive details of the government's conspiracy allegations through a bill of particulars. *United States v. Wilson*, 493 F. Supp. 2d 364, 372 (E.D.N.Y. 2006).

The charges here are neither complex nor difficult to understand. The Indictment provides the relevant dates of the alleged conspiracy as well as the specific narcotics involved and the approximate amounts. (Dkt. No. 1) The Indictment further provides, with

respect to the charges of using and maintaining a drug-involved premises, the specific premises used, the dates on which they were used, and the drugs alleged to have been used, manufactured, and distributed there. (*Id.*) Defendant acknowledges that the Government has turned over substantial discovery in this case, including approximately 180 pages of reports and records on February 16, 2023 and 485 pages of reports and records on March 1, 2023. (Dkt. No. 98, pg. 2) The Government notes that it has provided extensive discovery to defendant including a number of relevant witness statements. (Dkt. No. 99, pgs. 2-5) The information provided in the Indictment, coupled with the substantial discovery already provided to defendant, is sufficient to inform defendant of the charges against him, prepare a defense, avoid surprise at trial, and ensure against double jeopardy.

The additional details sought by defendant amount to an attempt to use a bill of particulars as a discovery device. *See e.g., United States v. Biaggi*, 675 F. Supp. 790, 809 (S.D.N.Y. 1987) (defendants request for "each alleged date, time, person present, place, nature of conversation [and] amount" is an "impermissible attempt to compel the Government to provide evidentiary details of its case."); *United States v. Trippe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001) (denying request for "names of all co-conspirators and/or aidors and abettors…of the defendant"); *United States v. Barret*, 824 F. Supp. 2d 419, 439 (E.D.N.Y. 2011) (the nature of the wheres, when and with whoms of a conspiracy are frequently held to be beyond the scope of a bill of particulars since the government "is not required to prove exactly when or how a conspiracy formed or when or how a particular defendant joined the scheme"); *United States v. Walker*, 922 F Supp. 732, 739 (N.D.N.Y. 1996) (overt acts in furtherance of a conspiracy need not be disclosed); *United*

*States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) (finding that the district court acted well within its discretion denying defendant's request for a bill of particulars specifying when he joined the conspiracy, the identity of unindicted co-conspirators, and the precise dates and locations he was alleged to have transported heroin). For these reasons, defendant's request for a bill of particulars is denied.

### *Disclosure of Rule 404(b) and Impeachment Evidence*

Defendant moves for disclosure of any evidence of prior crimes or bad acts the Government intends to introduce at trial pursuant to Federal Rule of Evidence 404(b). (Dkt. No. 38, pgs. 12-15) Defendant further moves for pretrial disclosure of impeachment evidence pursuant to Federal Rules of Evidence 608 and 609. (*Id.*) Defendant requests a pre-trial hearing to determine the admissibility of this evidence. (*Id.*)

The Government is required to provide "reasonable notice in advance of trial" of the general nature of prior uncharged crimes or bad acts it intends to introduce against a defendant. *See* Fed. R. Evid. 404(b). Here, the Government has preliminarily notified defendant that it intends to introduce all of his prior criminal or bad acts as proof of intent, knowledge, identity, plan, notice, opportunity, and absence of mistake or accident, pursuant to the requirements of Rule 404(b). The Government further indicates that it will provide, to defendant, a more specific notice of Rule 404(b) and impeachment evidence in advance of trial, pursuant to the District Court's pre-trial order. Based on these representations, the defendant's request is denied as moot. The issue of admissibility of evidence pursuant to Federal Rules of Evidence 404(b), 608 and 609 is left to the determination of Judge Sinatra at the time of trial.

*Disclosure of Informants' Identities and Files*

Defendant moves for disclosure of informant information as well as statements by any government informants. (Dkt. No. 38, pg. 35) The Government objects to this request on the grounds that defendant has not shown a particularized need for the information.

The Government has a qualified privilege to withhold information concerning the names of confidential informants that it does not intend to call as witnesses. *See Rovario v. United States*, 353 U.S. 53, 60-62 (1957) (the purpose of the privilege is to encourage citizens to report criminal activity). The informant's privilege must give way, however, if disclosure is essential to a defense or the fair determination of the case. *United States v. Lilla*, 699 F.2d 99, 105 (2d Cir. 1983). To that end, a defendant seeking the identity of a confidential informant must make some evidentiary showing as to why disclosure is significant to determining defendant's guilt or innocence. *See United States v. Jimenez*, 789 F.2d 167, 170 (2d Cir. 1986) (explaining that defendants face a "heavy burden" of establishing that disclosure is essential to the defense); *Lilla*, 699 F.2d at 105 ("this requires some demonstration that in the absence of such disclosure the defendant will be denied a fair trial"); *United States v. Valenzuela-Bernal*, 458 U.S. 858, 871 (1982) (defendant need not show that the informant's testimony would actually be helpful to the defense, but instead "the events to which a witness might testify, and the relevance of those events to the crime charged").

Defendant here has not met his heavy burden with respect to early disclosure of informant identities or statements. He does not offer examples of specific testimony or information these informants might provide, nor does he explain how such a disclosure is necessary or material to his defense. If and when the informants are to be called as

witnesses at trial, defendant will have access to their identities as well as all relevant impeachment material, prior statements, and notes of their interviews. In addition, if the informants reveal exculpatory information at any time, the Government has an ongoing duty to disclose this information in time for its effective use at trial. Thus, defendant's motion for disclosure of informant information and statements is denied.

### Preservation of Rough Notes

Defendant moves for the preservation of all rough notes taken by any federal, state, or local agents or officers who participated in the investigation of defendant, whether or not incorporated into official records. (Dkt. No. 38, pgs. 36-37) Defendant also requests that the Government be directed to preserve any notes by government witnesses. (*Id.*) The Government indicates that has no objection to the request that government agents retain notes taken during the investigation of the case. (Dkt. No. 72, pgs. 30) The Court grants defendant's motion and directs the Government to continue to arrange for the preservation of all rough notes.

### Co-Conspirator Statements

Defendant moves for a hearing to address the existence of a conspiracy prior to the admission of any co-conspirator statements at trial. *See* Fed. R. Evid. 801(d)(2)(E); *United States v. Bourjaily*, 483 U.S. 171 (1987); (Dkt. No. 38, pg. 36) The Government submits that it will proffer evidence in support of the admission of out-of-court co-conspirator statements at the time required by the District Court, and that its timely disclosure of documents and 3500 material will be more than sufficient to support a preliminary finding, by the trial court, as to a foundation for admission of co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E). (Dkt. No. 72, pgs. 27-28)

Rule 16 does not provide for the disclosure of co-conspirator statements. To the extent that the statements in question constitute 3500, *Giglio* or *Brady* material, those statements will be disclosed in accordance with the procedures discussed above. Otherwise, Federal Rule of Evidence 801(d)(2)(E) does not contain a requirement as to pretrial notice of statements. Prior to admitting a co-conspirator's statement over a defense objection that it does not qualify under Federal Rule of Evidence 801(d)(2)(E), the Court "must be satisfied that the statement actually falls within the definition of the Rule…[t]here must be evidence that there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made 'during the course and in furtherance of the conspiracy,'" *Bourjaily*, 483 U.S. at 17; *quoting* Fed. R. Evid. 801(d)(2)(E). The admissibility of this testimony, and whether a hearing is necessary to decide such issues of admissibility, is best decided by the District Judge, who will preside over the trial of this case. *See United States v. Mastropieri*, 685 F.2d 776, 788 n.10 (2d Cir. 1982).

Therefore, defendant's requests for disclosure of co-conspirator statements and a hearing to address the admissibility of statements made in furtherance of the conspiracy are denied without prejudice to renewal before Judge Sinatra at the time of trial.

*Identification Procedures*

Defendant indicates that the Government has not provided notice, pursuant to Rule 12(b)(4) of the Federal Rules of Criminal Procedure, indicating its intent to use identification procedures as to Morales Sanchez at the time of trial. (Dkt. No. 38, pg. 31) Defendant further requests the preclusion of any identification procedures involving defendant. (*Id.*)

The Government responds that it provided defendant with initial discovery, on September 6, 2022. (Dkt. No. 99, pg. 22, Exhs. B and C) According to the Government, this disclosure included the victim's identification of defendant, and cited both Rule 12 and Rule 16. Thus, it appears that the Government did comply with pretrial notice requirements pursuant to Rule 12(b)(4). Regardless, the Government represents that it anticipates that any witnesses asked to make an in-court identification of defendant will be identifying defendant from independent memory and personal experience. (Dkt. No. 72, pg. 20) Stated another way, the Government proffers that the witnesses in this case know the defendant through personal interactions. Therefore, to the extent that defendant is requesting a *Wade* hearing, his motion appears to be moot and is denied. *See United States v. Stephenson*, 17-CR-00199, 2020 WL 2115719 (W.D.N.Y. Feb. 24, 2020) (*Wade* hearings not required for confirmatory identifications where the witness is sufficiently familiar with defendant so as to negate the possibility of suggestiveness); *United States v. Salmon-Mendez*, 992 F. Supp. 2d 340, 342-43 (S.D.N.Y. 2014) (relying on the government's representation that an identifying witness had a prior relationship with the defendant in denying request for a *Wade* hearing). Finally, should an issue arise with respect to an out-of-court identification procedure, defendant may renew this motion before Judge Sinatra at the time of trial.

<u>Leave to File Additional Motions</u>

Defendant moves to reserve the right to make further motions as necessary. (Dkt. No. 38, pg. 46) To the extent defendant intends to bring motions based upon new information or evidence that has not yet been disclosed, his request for leave to file additional motions is granted. To the extent defendant intends to bring motions concerning issues that could have been raised prior to the previous motion deadline,

31

defendant's request is denied without prejudice to bring the motion upon a showing of good cause for the untimely filing.[10]

*Government's Motion for Reciprocal Discovery*

The Government moves for reciprocal discovery pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure including the opportunity to inspect, copy or photograph books, papers, documents, photographs, tangible objects or copies or portions thereof which are in the possession, custody or control of defendant and which defendant intends to introduce as evidence at trial; the results or reports of any physical or mental examinations or scientific tests or experiments made in connection with the case; and advance disclosure of any statements defendant proposes to introduce pursuant to Federal Rule of Evidence 807. (Dkt. No. 72, pg. 63) The Government's motion for reciprocal discovery is granted, and defendant is reminded that his disclosure obligations continue up through and during trial. *See* Fed. R. Crim. P. 16(c).

## CONCLUSION

For the foregoing reasons, it is recommended that defendant Roberto Morales Sanchez's motion to suppress evidence be denied. (Dkt. Nos. 38, 98) It is ordered that defendant Morales Sanchez's omnibus discovery demands are decided in the manner detailed above (Dkt. Nos. 38, 98) and that the Government's request for reciprocal discovery is granted (Dkt. No. 72).

---

[10] Defendant has also moved to join in the motions of his co-defendants. (Dkt. No. 38, pg. 46) As stated above, all co-defendants have entered plea agreements with the Government. Only defendant Katie Calimeri filed motions in this case (Dkt. No. 36) and she entered into a plea agreement before the Government responded and before those motions were adjudicated by the Court. Calimeri's pretrial motions do not raise any material issues relevant to defendant that were not raised in his own motions. Thus, his motion for joinder is denied as moot.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report, Recommendation and Order be filed with the Clerk of Court.

Unless otherwise ordered by Judge Sinatra, any objections to the recommendation portion of this Report, Recommendation and Order must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 59(b), 45(a), and 45(c) of the Federal Rules of Criminal Procedure, and Local Rule of Criminal Procedure 59. Any requests for an extension of this deadline must be made to Judge Sinatra.

*Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report, Recommendation and Order WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.* See Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *Pursuant to Local Rule of Criminal Procedure 59(c)(2), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."* **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

33

**SO ORDERED**.

Dated:  May 5, 2023
        Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge